UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YEDA RESEARCH AND DEVELOPMENT COMPANY LTD.<br>    Plaintiff,<br><br>    v.<br><br>ICAD, INC. and INVIVO CORPORATION<br>    Defendants. | Civil Action No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

## COMPLAINT

Comes now Yeda Research and Development Company Limited ("Yeda" or "Plaintiff") and files this complaint against iCAD, Inc. ("iCAD") and Invivo Corporation ("Invivo", collectively with iCAD "Defendants"), alleging as follows:

## THE PARTIES

1. Plaintiff, Yeda is a company organized and existing under the laws of Israel with offices at PO Box 95, Rehovot 76100, Israel.

2. Defendant iCAD is a corporation formed and existing under the laws of the State of Delaware with offices at 98 Spit Brook Road, Suite 100, Nashua, New Hampshire 03062.

3. Defendant Invivo Corporation is a corporation formed and existing under the laws of the State of Delaware with offices at 3545 SW 47th Avenue, Gainesville, FL 32608.

## NATURE OF SUIT

4. The technology at issue was developed by Professor Hadassa Degani of the Department of Biological Regulation at the Weizmann Institute of Science (of which, Yeda is the licensing authority) relating to a method for monitoring a system in which a fluid flows and which is characterized by a change in the system within time and space.

5. In 2002, Yeda licensed the technology to 3TP LLC ("3TP"), including certain technologies, patents, software, clinical results and other know-how.

6. 3TP, which changed its name to CAD Sciences and later sold its assets to Defendant iCAD, used the Invention to develop a line of products.

7. Yeda and iCAD entered into an agreement in 2012, which supplanted the prior agreement with 3TP. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

8. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

9. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

10. iCAD terminated the 2012 agreement in 2016, and within weeks sold to Invivo all of its assets, which included the products at issue, the source code provided by Yeda under the agreement, and other proprietary information that Yeda licensed to iCAD.

11. Upon information and belief, Invivo's products, including without limitation DynaCad, directly or indirectly copy, utilize, include, and/or otherwise incorporate versions of information licensed by Yeda, but Invivo has not paid royalties or other compensation to Yeda for its sales of licensed products. Yeda has attempted to arrange an audit of the DynaCad source code in order to determine whether it is directly or indirectly copied from, or

otherwise infringes Yeda's copyright in its source code, but those efforts have not been successful.

12. Yeda is now bringing claims (i) against iCAD and Invivo for copyright infringement, (ii) against iCAD for breach of contract, (iii) against iCAD and Invivo for misappropriation of trade secrets, (iv) against Invivo for tortious interference with existing business relationships, and (v) against Invivo for unjust enrichment, seeking monetary relief.

**JURISIDICTION AND VENUE**

13. Venue is proper in this district in accordance with Section 13 of the 2012 Agreement, as defined below, according to which iCAD and Yeda agreed that "[w]henever a dispute shall arise between the parties arising out of or in connection with this Agreement and such dispute is not resolved amicably as aforesaid, such dispute shall be prosecuted exclusively in a court of competent jurisdiction within the City of New York, New York".  As a successor in interest to the 2012 Agreement, Invivo is likewise bound by its terms, including the venue provision.

14. This court has subject matter jurisdiction under 28 U.S.C. § 1331 because the claim arises under the Copyright Act, 17 U.S.C.§§ 101, et seq., and the court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over all other claims, which are part of the same case or controversy.

15. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a State and citizens or subjects of a foreign state.

**FACTUAL BACKGROUND**

*I.     The 2002 Agreement*

16. Yeda is an Israeli company that commercializes technologies and innovations developed at the Institute.

17. In the years prior to 2002, Professor Degani was employed at the Weizmann Institute of Science, where she developed a method for detecting a malignancy in an organ or area of a body by monitoring changes in images captured over time of the organ or body area into which a fluid, such as a contrast material, had been introduced (the "*Invention*").

18. Yeda filed for and was granted several patents covering the Invention, both in the U.S. and other countries (the "*Licensed Patents*").

19. In July 2002, Yeda and 3TP entered into a License Agreement, substantially in the form attached hereto as Exhibit A (the "*2002 Agreement*") ████████████████████████████████████████████████████████████████████████

20. 3TP changed its name to CAD Sciences, and Defendant iCAD purchased the assets of CAD Sciences in 2008.

21. In 2007, CAD Sciences breached the 2002 Agreement. In response to the breach, Yeda terminated the 2002 Agreement, and later sued CAD Sciences for infringement of the U.S. Patents covering the Invention (the "*2011 Litigation*").

II.   The 2012 Agreement

22. The 2011 Litigation was settled by a Patent Settlement and Technology License Agreement executed by Yeda and Defendant iCAD, dated June 15, 2012, a true copy of which is attached hereto as Exhibit B (the "*2012 Agreement*").

23. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████

24. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

4

25. ▮▮▮

26. ▮▮▮

27. ▮▮▮

28. ▮▮▮

29. ▮▮▮

██████████████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████

30. ████████████████████████████████████████████████████████████████████
████████████

███████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
████████████████████████████████████████████████████
█████████████████████████████████████████████████████
████████████████████████████████████████████████████
█████████████████████████████████████████████████████
███████████████████████████████████████████████

31. ████████████████████████████████████████████████████████████████████
████████████

█████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████

### III. Sale of iCAD to Invivo

32. ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ on December 9, 2016, iCAD sold to Invivo substantially all of its assets, including its rights in the VersaVue under an Asset Purchase Agreement executed by Invivo, as purchaser, and iCAD, as seller, dated December 16, 2016, a true copy of which is attached hereto as Exhibit C (the "*Invivo Asset Purchase Agreement*").

### IV. Yeda Source Code

33. ████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████
█████████████████████████████████████████████████████
███████████████████████

6

34. Upon information and belief, iCAD used the Yeda Source Code in the development and production of iCAD's product line, including the VersaVue product, which iCAD sold to Invivo under the Invivo Asset Purchase Agreement.

35. As described below, iCAD's filings with the U.S. Food and Drug Administration ("*FDA*") admit that the VersaVue software relies on the Yeda Source Code.

36. In April, 2003 iCAD filed a request with the FDA on Form 510(k) for approval of the Licensed Products that were covered by the 2002 Agreement, and the FDA granted such requests on June 23, 2003 (the "*First FDA Approval*").  A copy of the First FDA Approval is is attached hereto as Exhibit D.

37. In 2012, iCAD filed a Special 510(k) Device Modification request with the FDA (the "*2012 FDA Filing*"), seeking approval of updated versions of certain of the products that were the subject of the First FDA Approval, including the VersaVue.  A copy of the 2012 FDA Filing is attached hereto as Exhibit E.

38. Item 6.4 of iCAD's 2012 FDA Filing admits that "[t]he iCAD VersaVue Enterprise Suite has the same intended use, fundamental scientific technology, and characteristics as the previously cleared predicate devices," referring to the subject of the First FDA Approval.

39. Based at least on iCAD's 2012 FDA Filing, upon information and belief, the software in the updated version of VersaVue uses the same technology as the VersaVue that was approved in the First FDA Approval, which relied on the Yeda Source Code.

40. iCAD terminated the 2012 Agreement on December 9, 2016, at which time it lost all right to use software that was based on the Yeda Source Code.  Any further use or copying of the Yeda Source Code after the 2016 termination infringes Yeda's copyright in the Yeda Source Code.

41. iCAD's sale of substantially all of its assets to Invivo under the Invivo Asset Purchase Agreement included the sale of Yeda Source Code, as well as trade secrets that were part of the Licensed Information under the 2012 Agreement.

42. That sale constituted a breach of the 2012 Agreement, and a transfer of Yeda's trade secrets, as prohibited by the 2012 Settlement Agreement.

## CAUSES OF ACTION

### COUNT I (AGAINST ALL DEFENDANTS):
### COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. §§101, *et seq.*

43. Yeda incorporates by reference and re-alleges each of its foregoing allegations as if fully set forth herein.

44. Yeda's computer source code as licensed to iCAD contains substantial amounts of original materials that are copyrightable subject matter and have been copyrighted under the Copyright Act, 17 U.S.C. §§ 101, *et seq*. The source code has been registered with the Copyright Office, and granted Registration No. TXu 2-051-709, with an effective date of registration of October 24, 2017; accordingly, the requirement of 17 U.S.C. § 411(a) has been met. A true and correct copy of the Copyright Registration of the Yeda Source Code is attached hereto as Exhibit F.

45. iCAD transferred to Invivo source code and computer programs that are the subject of Yeda's copyright, without consent, approval or authorization of Yeda, and in violation of the license granted to iCAD in the 2012 Settlement Agreement.

46. Upon information and belief, Invivo has unlawfully reproduced, distributed, and used, and continues to unlawfully reproduce, distribute, and use computer code that is owned by Yeda and copyrighted under the Copyright Act.

47. The actions and conduct by iCAD in transferring Yeda's source code to Invivo infringe upon Yeda's rights under 17 U.S.C. §§ 106 to display, reproduce, prepare derivative works and distribute the copyrighted works to the public.

48. The above actions by iCAD and Invivo constitute literal and/or non-literal copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 501.

49. On information and belief, the acts of infringement by iCAD and Invivo are and have been knowing and willful.

50. As a result of the copyright infringement described above, Yeda is entitled to relief including monetary damages and prejudgment interest under 17 U.S.C. §§ 502 and 504.

### COUNT II (AGAINST iCAD):
### BREACH OF CONTRACT

51. Yeda incorporates by reference and re-alleges each of its foregoing allegations as if fully set forth herein.

52. iCAD received Yeda's Licensed Information, including the source code used in the VersaVue, under the conditions set forth in the 2012 Agreement, which prohibited, *inter alia*, the sale, transfer or sublicensing of such Licensed Information.

53. iCAD's sale and transfer to Invivo of the Licensed Information, including the source code in the VersaVue, breached the 2012 Agreement.

54. As a proximate result of Defendant iCAD's conduct, Plaintiff Yeda has suffered and continues to suffer actual damage.

### COUNT III (AGAINST ALL DEFENDANTS):
### MISAPPROPRIATION OF TRADE SECRETS BY iCAD AND INVIVO

55. Yeda incorporates by reference and re-alleges each of its foregoing allegations as if fully set forth herein.

56. The assets transferred in the Invivo Asset Purchase Agreement included trade secrets and confidential information of Yeda, particularly relating to the VersaVue, which was transferred to Invivo under the Invivo Asset Purchase Agreement.

57. [REDACTED]

58. As a result of the transfer of trade secrets and confidential information by iCAD to Invivo under the Invivo Asset Purchase Agreement, Yeda has been damaged, for which it seeks recovery, including without limitation, lost profits.

### COUNT IV (AGAINST INVIVO):
### TORTIOUS INTERFERENCE WITH EXISTING BUSINESS RELATIONSHIPS/CONTRACTS

59. Yeda incorporates by reference and re-alleges each of its foregoing allegations as if fully set forth herein.

60. Upon information and belief, Invivo entered into the Asset Purchase Agreement with iCAD and acquired the Yeda Source Code and Licensed Information, while knowing of the existence and content of the 2012 Agreement between Yeda and iCAD.

61. Defendant Invivo therefore willfully and intentionally interfered with the existing contractual relationship between Plaintiff Yeda and Defendant iCAD, thereby causing iCAD to breach the 2012 Agreement, which interference actually and proximately damaged Yeda.

62. Accordingly, Yeda requests actual and exemplary damages, costs, expenses, interest and any other damages permitted by law or equity, arising out of Invivo's interference.

### COUNT V (AGAINST INVIVO):
### UNJUST ENRICHMENT

63. Yeda incorporates by reference and re-alleges each of its foregoing allegations as if fully set forth herein.

64. Invivo has sold and continues to sell VersaVue, which incorporates Yeda's Licensed Information including the Yeda Source Code, but it has not paid royalties or any other consideration to Yeda on such sales.

65. As a result, Invivo has been unjustly enriched by its use of Yeda's Licensed Information including the Yeda Source Code.

66. Invivo's unlawful and unjust use of the Licensed Information, including the Yeda Source Code has proximately caused damages to Yeda.

## JURY DEMAND

67. Pursuant to Fed. R. Civ. P. 38, Yeda hereby demands a trial by jury of all issues so triable in this matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Yeda requests that this Court enter judgment in its favor and against Defendants, and providing the following relief:

A. enter judgment against the Defendants for actual and exemplary damages in an amount to be determined at trial, and costs, including litigation expenses, expert witness fees, pre- and post-judgment interest, and any other amounts authorized by law, as well and attorneys' fees incurred in connection with this lawsuit,

B. enter a judicial determination and order that the computer programs included in the VersaVue as sold to Invivo in the Asset Purchase Agreement include proprietary source code of Yeda, and

C. such other and further relief as this Court deems just and proper.

Dated: New York, New York
September 5, 2018

                                          Respectfully submitted,

                                          PEARL COHEN ZEDEK LATZER
                                          BARATZ LLP

                                          Guy Yonay (GY-3028)
                                          Mark S. Cohen
                                          1500 Broadway, 12th Floor
                                          New York, New York 10036
                                          Tel:   (646) 878-0800
                                          Fax:  (646) 878-0801

                                          *Attorneys for Plaintiff,*
                                          *YEDA RESEARCH AND*
                                          *DEVELOPMENT COMPANY LTD.*