UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YEDA RESEARCH AND DEVELOPMENT COMPANY LTD.,<br>Plaintiff,<br>v.<br>ICAD, INC.<br>Defendant. | Civil Action No. 1:18-cv-08083-GBD<br><br>**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Comes now Yeda Research and Development Company Limited ("Yeda" or "Plaintiff") and files this complaint against iCAD, Inc. ("iCAD" or "Defendant"), alleging as follows:

## THE PARTIES

1. Plaintiff Yeda is a company organized and existing under the laws of Israel with offices at PO Box 95, Rehovot 76100, Israel.

2. Defendant iCAD is a corporation formed and existing under the laws of the State of Delaware with offices at 98 Spit Brook Road, Suite 100, Nashua, New Hampshire 03062.

## NATURE OF SUIT

3. The technology at issue was developed by Professor Hadassa Degani of the Department of Biological Regulation at the Weizmann Institute of Science (of which, Yeda is the licensing authority) relating to a method for monitoring a system in which a fluid flows and which is characterized by a change in the system within time and space.

4. In 2002, Yeda licensed the technology to 3TP LLC ("3TP"), including certain technologies, patents, software, clinical results and other know-how.

5. 3TP, which changed its name to CAD Sciences and later sold its assets to Defendant iCAD, used the Invention to develop a line of products.

1

6. Yeda and iCAD entered into an agreement in 2012, which supplanted the prior agreement with 3TP. ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

7. The 2012 agreement required iCAD to pay an ongoing royalty to Yeda, calculated as a percentage of licensed products sold. ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

8. Subsequently, iCAD allowed Invivo Corporation ("Invivo") to use the technology licensed to it by Yeda, but instead of paying royalties to Yeda on the actual sales of products sold by Invivo, iCAD paid royalties calculated based on the bulk payments made to it by Invivo.

9. iCAD terminated the 2012 agreement in 2016, and within weeks sold to Invivo all of its assets, including the VersaVue product at issue, and (upon information and belief) the source code provided by Yeda under the agreement, and other proprietary information that Yeda licensed to iCAD, which was incorporated into the iCAD software.

10. Upon information and belief, Invivo's products, including without limitation DynaCad, directly or indirectly copy, utilize, include, and/or otherwise incorporate versions of information licensed by Yeda, but Invivo has not paid royalties or other compensation to Yeda for its sales of licensed products. Yeda has attempted to arrange an audit of the DynaCad source code in order to determine whether it is directly or indirectly copied from, or otherwise infringes Yeda's copyright in its source code, but those efforts have not been successful.

11. Yeda is now bringing claims against iCAD for copyright infringement and breach of contract, seeking monetary relief.

**JURISIDICTION AND VENUE**

12. Venue is proper in this district in accordance with Section 13 of the 2012 Agreement, as defined below, according to which iCAD and Yeda agreed that "[w]henever a dispute shall arise between the parties arising out of or in connection with this Agreement and such dispute is not resolved amicably as aforesaid, such dispute shall be prosecuted exclusively in a court of competent jurisdiction within the City of New York, New York".

13. This court has subject matter jurisdiction under 28 U.S.C. § 1331 because the claim arises under the Copyright Act, 17 U.S.C.§§ 101, et seq., and the court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over all other claims, which are part of the same case or controversy.

14. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a State and citizens or subjects of a foreign state.

**FACTUAL BACKGROUND**

*I.    The 2002 Agreement*

15. Yeda is an Israeli company that commercializes technologies and innovations developed at the Institute.

16. In the years prior to 2002, Professor Degani was employed at the Weizmann Institute of Science, where she developed a method for detecting a malignancy in an organ or area of a body by monitoring changes in images captured over time of the organ or body area into which a fluid, such as a contrast material, had been introduced (the "*Invention*").

17. Yeda filed for and was granted several patents covering the Invention, both in the U.S. and other countries (the "*Licensed Patents*").

18. In July 2002, Yeda and 3TP entered into a License Agreement, substantially in the form attached hereto as Exhibit A (the "*2002 Agreement*") under which Yeda granted to 3TP a royalty-bearing license to use and commercialize the Invention.

19. 3TP changed its name to CAD Sciences, and Defendant iCAD purchased the assets of CAD Sciences in 2008.

20. In 2007, CAD Sciences breached the 2002 Agreement. In response to the breach, Yeda terminated the 2002 Agreement, and later sued CAD Sciences for infringement of the U.S. Patents covering the Invention (the "*2011 Litigation*").

II. *The 2012 Agreement*

21. The 2011 Litigation was settled by a Patent Settlement and Technology License Agreement executed by Yeda and Defendant iCAD, dated June 15, 2012, a true copy of which is attached hereto as Exhibit B (the "*2012 Agreement*").

22. The license granted in the 2012 Agreement by Yeda to Defendant iCAD was similar to that of the 2002 Agreement, and included the right to use the Licensed Patents and Licensed Information (defined below).

23. Licensed Information is defined in Section 1.1 of the 2002 Agreement, *inter alia*, as follows:



24. The 2012 Agreement allowed iCAD to sell Licensed Products, defined in Section 1.1 of the 2012 Agreement as follows:





25. Exhibit C of the 2012 Agreement listed Licensed Products, and included, *inter alia*, the VersaVue Enterprise ("*VersaVue*"), a version of which was sold by iCAD to Invivo under the Invivo Asset Purchase Agreement (described below), and continues to be marketed and sold today by Invivo as part of Invivo's DynaCad product.

26. The 2012 Agreement granted to iCAD "a royalty bearing, non-exclusive, *non-transferable* (except as provided herein) worldwide license without the right to grant sublicenses under the Licensed Information..." (emphasis added).

27. Section 4.2 of the 2012 Agreement includes a specific sublicensing prohibition under which:



28. Section 8.1 of the 2012 Agreement further limited the transfer by iCAD of the rights it received from Yeda by providing that:



29. Section 7.1 of the 2012 Agreement imposed confidentiality obligations on iCAD and required it to:



5



30. Section 7.4 of the 2012 Agreement reinforced the confidentiality obligation by providing that:



31. █████████████████████████████████████████

████████████████████████████████████████

█████████

32. █████████████████████████████████████████
33. █████████████████████████████████████████

████████████████████████████████████████

███████████████████████████

34. █████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████

6

35. Per Section 10.6:



### III. Sale of iCAD Assets to Invivo

36. Notwithstanding the prohibitions in the 2012 Agreement against iCAD's transfer of rights, assignment, sub-licensing and disclosure of confidential information, on December 9, 2016, iCAD sold to Invivo substantially all of its assets, including its rights in the VersaVue under an Asset Purchase Agreement executed by Invivo, as purchaser, and iCAD, as seller, dated December 16, 2016, a true copy of which is attached hereto as Exhibit C (the "*Invivo Asset Purchase Agreement*").

### IV. Yeda Source Code

37. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

38. Upon information and belief, iCAD used the Yeda Source Code in the development and production of iCAD's product line, including the VersaVue product, which iCAD sold to Invivo under the Invivo Asset Purchase Agreement.

39. As described below, iCAD's filings with the U.S. Food and Drug Administration ("*FDA*") admit that the VersaVue software relies on the Yeda Source Code.

40. In April, 2003 iCAD filed a request with the FDA on Form 510(k) for approval of the Licensed Products that were covered by the 2002 Agreement, and the FDA granted such requests on June 23, 2003 (the "*First FDA Approval*"). A copy of the First FDA Approval is is attached hereto as Exhibit D.

41.     In 2012, iCAD filed a Special 510(k) Device Modification request with the FDA (the "*2012 FDA Filing*"), seeking approval of updated versions of certain of the products that were the subject of the First FDA Approval, including the VersaVue. A copy of the 2012 FDA Filing is attached hereto as Exhibit E.

42.     Item 6.4 of iCAD's 2012 FDA Filing admits that "[t]he iCAD VersaVue Enterprise Suite has the same intended use, fundamental scientific technology, and characteristics as the previously cleared predicate devices," referring to the subject of the First FDA Approval.

43.     Based at least on iCAD's 2012 FDA Filing, upon information and belief, the software in the updated version of VersaVue uses the same technology as the VersaVue that was approved in the First FDA Approval, which relied on the Yeda Source Code.

44.     iCAD terminated the 2012 Agreement on December 9, 2016, at which time it lost all right to use software that was based on the Yeda Source Code. Any further use or copying of the Yeda Source Code after the 2016 termination infringes Yeda's copyright in the Yeda Source Code.

45.     iCAD's sale of substantially all of its assets to Invivo under the Invivo Asset Purchase Agreement included the sale of software incoporating Yeda Source Code and/or a derivative work thereof, without payment or consent by Yeda, in breach of the 2012 Agreement.

## CAUSES OF ACTION

### COUNT I (AGAINST ICAD):
### COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. §§ 101, *et seq.*

46.     Yeda incorporates by reference and re-alleges each of its foregoing allegations as if fully set forth herein.

47.     Yeda's Source Code as previously licensed to iCAD contains substantial amounts of original materials that are copyrightable subject matter and have been copyrighted under the Copyright Act, 17 U.S.C. §§ 101, *et seq*. The Yeda Source Code has been registered

with the Copyright Office, and granted Registration No. TXu 2-051-709, with an effective date of registration of October 24, 2017; accordingly, the requirement of 17 U.S.C. § 411(a) has been met. A true and correct copy of the Copyright Registration of the Yeda Source Code is attached hereto as Exhibit F.

48. iCAD transferred to Invivo source code and computer programs that are the subject of Yeda's copyright, without consent, approval or authorization of Yeda, and in violation of the license granted to iCAD in the 2012 Settlement Agreement.

49. The actions and conduct by iCAD in transferring Yeda's source code to Invivo infringe upon Yeda's rights under 17 U.S.C. §§ 106 to display, reproduce, prepare derivative works and distribute the copyrighted works to the public.

50. The above actions by iCAD constitute literal and/or non-literal copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 501.

51. On information and belief, the acts of infringement by iCAD are and have been knowing and willful.

52. As a result of the copyright infringement described above, Yeda is entitled to relief including monetary damages and prejudgment interest under 17 U.S.C. §§ 502 and 504.

### COUNT II (AGAINST iCAD):
### BREACH OF CONTRACT

53. Yeda incorporates by reference and re-alleges each of its foregoing allegations as if fully set forth herein.

54. Yeda and iCAD are parties bound by the valid and enforceable 2012 Agreement.

55. ███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
█████████████████████████████

56. Yeda satisfactorily performed its obligations under the 2012 Agreement and provided iCAD Yeda Licensed Information, including its Source Code.

57. iCAD received Yeda's Licensed Information, including the source code used in the VersaVue, under the conditions set forth in the 2012 Agreement.

58. iCAD failed to remit the required Ongoing Royalty for the Licensed Product which it sold and transferred to Invivo and in so doing breached Sections 6.2(ii) and 6.3(ii) of the 2012 Agreement.

59. iCAD failed to keep confidential Yeda's Licensed Information, and in so doing breached Sections 7.1 and 7.4 of the 2012 Agreement.

60. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

61. As a proximate result of Defendant iCAD's conduct, Yeda has suffered and continues to suffer actual damage.

## JURY DEMAND

62. Pursuant to Fed. R. Civ. P. 38, Yeda hereby demands a trial by jury of all issues so triable in this matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Yeda requests that this Court enter judgment in its favor and against Defendant, and providing the following relief:

A. enter judgment against the Defendant for actual and exemplary damages in an amount to be determined at trial, and costs, including litigation expenses, expert

witness fees, pre- and post-judgment interest, and any other amounts authorized by law, as well and attorneys' fees incurred in connection with this lawsuit,

B. enter a judicial determination and order that the computer programs included in the VersaVue as sold to Invivo in the Asset Purchase Agreement include proprietary source code of Yeda, and

C. such other and further relief as this Court deems just and proper.

Dated: New York, New York
October 22, 2019

> Respectfully submitted,
>
> PEARL COHEN ZEDEK
> LATZER BARATZ LLP
>
> *(signed)*
>
> Guy Yonay (GY-3028)
> Mark S. Cohen
> 1500 Broadway, 12th Floor
> New York, New York 10036
> Tel: (646) 878-0800
> Fax: (646) 878-0801
>
> *Attorneys for Plaintiff,*
> *YEDA RESEARCH AND*
> *DEVELOPMENT COMPANY LTD.*